UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
FRANCIS SANTO,                                          :
                                                        :
                 Plaintiff,     :   **MEMORANDUM &**
                                                        :   **ORDER GRANTING**
   -against-                                           :   **DEFENDANTS' MOTION**
                                                        :   **FOR SUMMARY**
JENNIFER REIS, et al.,                                  :   **JUDGMENT**
                                                        :
                Defendants.     :   3:22-CV-1484 (VDO)
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

    Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 27.) The Court has reviewed the Motion, the memorandum in support thereof (ECF No. 27-1), the facts contained in Defendants' Local Rule 56(a)(1) Statement (ECF No. 27-2), Defendants' exhibits (ECF Nos. 27-3–27-9), and the record in this matter, and is thoroughly advised in the premises.

    After careful review, the Court **GRANTS** Defendants' motion for summary judgment.

**I.    BACKGROUND**

    Plaintiff Francis Santo filed a complaint under 42 U.S.C. § 1983 against sixteen defendants. (Compl., ECF No. 1, ¶¶ 4–17.) Plaintiff alleged four claims in his complaint: (1) defendants Dumas, Thibodeau, Martin, and Nichols threatened Plaintiff in an attempt to get him to submit a false statement implicating others in an alleged crime; (2) defendants Quiros, Rule, Stanley, Barone, Town of Suffield, and Mack intentionally ignored Plaintiff's grievances; (3) defendants Reis, Nunez, Domijon, Rodriguez, and Boyd conspired with correctional staff to keep Plaintiff on high security status; and (4) defendant Gawronski failed to properly investigate a state charge. (*Id.* ¶¶ 18–44.)

In his initial review order, Judge Alvin Thompson dismissed the claims against defendants Quiros, Rule, Stanley, Barone, Town of Suffield, Mack, Boyd, and Gawronski. (Initial Review Order, ECF No. 9, at 14.) But Judge Thompson permitted Plaintiff to proceed on his First Amendment retaliation claim against defendants Dumas, Thibodeau, Martin, and Nichols and on his due process claim for placement on high security status without due process against defendants Reis, Rodriguez, Nunez, and Domijon. (*Id.*) The case was then transferred to this Court for further proceedings. (*See* ECF No. 22.)

Defendants filed a Motion for Summary Judgment, which is now before the Court. (Defs. Mot., ECF No. 27.) Defendants argue in their motion that (1) Plaintiff failed to exhaust his administrative remedies on both claims, (2) Plaintiff's due process claim fails on the merits, and (3) Defendants are entitled to qualified immunity. (Defs. Mot. at 1–2.) Because the Court does not reach the Defendants' latter two defenses, it recites here only those facts necessary to decide whether Defendants can prevail on the affirmative defense of failure to exhaust administrative remedies.

The relevant facts are taken from Defendants' Local Rule 56(a)1 Statement and supporting exhibits. ("Defs.' 56(a)," ECF No. 27-2.) Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to those in the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Defendants informed Plaintiff of this requirement. (*See* ECF No.

27-10, Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Loc. R. of Civ. Pro. 56(b).) Plaintiff did not submit a Local Rule 56(a)2 Statement.

That Plaintiff is unrepresented does not excuse him from complying with the Court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-CV-6358 (MAT), 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) ("[W]hen a plaintiff is proceeding *pro se*, 'all normal rules of pleading are not absolutely suspended.'" (citation omitted)). Thus, Defendants' facts, where supported by evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions[.]").

Defendants' Local Rule 56(a)1 Statement shows that Plaintiff was housed at MacDougall-Walker Correctional Institution ("Walker") from October 8, 2020, to April 29, 2021, when he was transferred to Corrigan-Radgowski Correctional Center ("Corrigan"). (Defs.' 56(a) ¶ 1.) Plaintiff admitted to possessing an unauthorized cell phone while at Walker and pled guilty to a disciplinary report for possessing contraband. (*Id.* ¶¶ 8–9.) Director of Population Management David Maiga placed Plaintiff on High Security status on July 2, 2021. (*Id.* ¶¶ 10–11.) That same day, Plaintiff was informed that he had been placed on High Security status and signed an acknowledgement form. (*Id.* ¶ 12.)

Plaintiff was later transferred to Cheshire Correctional Institution ("Cheshire"), where he filed a Level 1 grievance on August 6, 2022. (*Id.* ¶ 14.) Plaintiff complained in that grievance of being "placed on high security" without receiving a hearing. (*Id.*) Plaintiff's grievance was rejected as being non-compliant with Administrative Directive ("A.D.") 9.6. (*Id.* ¶ 15.) Plaintiff re-filed his grievance on September 8, 2022. (*Id.* ¶ 16.) This grievance was accepted, but it was denied after a determination that Plaintiff received a review hearing. (*Id.* ¶¶ 16–17.) Plaintiff filed a Level 2 appeal of the denial of his Level 1 grievance on September 21, 2022. (*Id.* ¶ 18.) Plaintiff's Level 2 appeal was rejected because his Level 1 grievances were untimely. (*Id.* ¶ 19.) Plaintiff's Level 1 grievances did not mention being held in the RHU or anyone retaliating against him. (*Id.* ¶ 23.) Plaintiff filed no other grievances from May 1, 2021, to November 23, 2022. (*Id.* ¶ 24.)

## II.  LEGAL STANDARD

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23; *Anderson* 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which the jury reasonably could find for it. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

## III. DISCUSSION

### A. General Principles of Exhaustion

Defendants seek summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies before filing his § 1983 complaint. (Defs. Mem., ECF No. 27-1, at 1.) The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly" (citation omitted)). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making

informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and citation omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from

7

taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the Court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendant establishes that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability[.]").

### B. Application of General Principles of Exhaustion

#### 1. DOC Grievance Procedures

The Connecticut Department of Correction ("DOC") requires inmates to submit grievances in accordance with A.D. 9.6, which provides procedural rules and deadlines for processing general inmate requests. *See Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (summary order); *see also Gaston v. Doe*, No. 3:19-CV-3 (AWT), 2021 WL 66434, at

*3 (D. Conn. Jan. 7, 2021) ("The general inmate grievance procedure is set forth in Administrative Directive 9.6 and can be found at portal.ct.gov/DOC[.]"). "The Court can take judicial notice of the State of Connecticut Administrative Directives that are found on the Department of Correction's website[.]" *Barfield v. Milling*, No. 14-CV-914 (VAB), 2015 WL 1737671, at *3 n.1 (D. Conn. Apr. 16, 2015).

Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(a)(i)(1). If "the verbal communication does not resolve the issue," the inmate must "submit a written request via CN 9601, Inmate Request Form." A.D. 9.6(6)(a)(i)(2)(a). The Level 1 grievance filed on the CN 9602 form must be filed within thirty calendar days of the occurrence or discovery of the cause of the grievance, *see* A.D. 9.6(6)(a)(ii)(4), and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See* A.D. 9.6(6)(a)(ii)(2). If the inmate's Level 1 grievance complies with the relevant administrative directives, the Unit Administrator must review the grievance and provide a written response to the inmate no more than thirty days after the Level 1 grievance is filed. *See* A.D. 9.6(6)(b)(i)(1)–(3). If the Level 1 grievance does not comply with the administrative directives, the grievance must be rejected and the inmate notified. *See* A.D. 9.6(6)(b)(i)(2)(a)(i). The inmate may file a corrected grievance within five calendar days, but if the inmate fails to correct the defective grievance, his grievance remains rejected and is not subject to further appeal. *See* A.D. 9.6(6)(b)(i)(2)(a)(i)(1)–(2).

The inmate may appeal the disposition of a Level 1 grievance by filing a Level 2 grievance within five calendar days of receipt of the Level 1 decision. *See* A.D. 9.6(6)(b)(ii)(1). Prison officials must respond to the Level 2 grievance within thirty business days. *See* A.D. 9.6(6)(b)(ii)(4). Level 3 grievances are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 grievances to which there has been an untimely response. *See* A.D. 9.6(6)(b)(iii)(1)(a)–(c). A Level 3 grievance must be filed within five calendar days of receipt of Level 2 grievance decision. *See* A.D. 9.6(6)(b)(iii)(2). Level 3 review is the final level of review of all grievances that meet the requirements of the administrative directives. *See* A.D. 9.6(6)(b)(iii)(5).

### 2. Plaintiff's Utilization of DOC Grievance Procedures

On August 6, 2022, Plaintiff filed a Level 1 grievance regarding being "placed on high security" without receiving a hearing. (Defs.' 56(a) ¶ 14.) Plaintiff discovered that he had been placed on high security status on July 2, 2021, when he signed the acknowledgement form. (Defs.' 56(a) ¶¶ 11–12.) Thus, Plaintiff was required to file the grievance within thirty days of July 2, 2021. *See* A.D. 9.6(6)(a)(ii)(4). Plaintiff's Level 1 grievance, filed on August 6, 2022, was filed more than one year after the time for grieving that issue expired. Accordingly, it was untimely and should have been rejected. *See* A.D. 9.6(5)(i) ("Any request for an administrative remedy that does not adhere to the time limitations set forth shall be rejected.").

Plaintiff's grievance, which only grieved the alleged due process violation regarding his security status, was rejected for being procedurally non-compliant on September 1, 2022. (*See* ECF No. 27-7 at 1.) Inmates may file a corrected grievance within five calendar days if a

Level 1 grievance is procedurally non-compliant. *See* A.D. 9.6(6)(b)(i)(2)(a)(i)(1). Plaintiff re-filed his grievance on September 8, 2022, but the re-filed grievance was untimely under A.D. 9.6(6)(b)(i)(2)(a)(i)(1). (*See* Defs.' 56(a) ¶ 16.) Notwithstanding the untimeliness of the re-filed Level 1 grievance, Warden Reis reviewed Plaintiff's Level 1 grievance and denied it on September 15, 2022, after determining Plaintiff "received a High Security review hearing on 8/24/22." (ECF No. 27-7 at 9.) The decision form indicated that Plaintiff had five calendar days to file an appeal of the Level 1 decision. (*Id.*)

Plaintiff filed a Level 2 appeal, but it was also untimely. As the decision form indicated, Plaintiff had to file a Level 2 grievance within five calendar days of receipt of the Level 1 decision. *See* A.D. 9.6(6)(b)(ii)(1). The Level 2 appeal was filed on September 21, 2022, six calendar days after receiving the Level 1 decision. (*See* ECF No. 27-7 at 11.) Notwithstanding the untimeliness of the appeal, Plaintiff's Level 2 appeal was rejected because Plaintiff's Level 1 grievances were untimely under A.D. 9.6(6)(a)(ii)(4) as they were filed "well beyond 30 calendar days of discovery of the reason for filing [Plaintiff's] grievance[.]" (ECF No. 27-7 at 11.) The decision form advised Plaintiff that the decision was not subject to further appeal. (*Id.*) There is no evidence in the record that Plaintiff filed a Level 3 appeal. Plaintiff filed no other grievances from May 1, 2021, to November 23, 2022. (Defs.' 56(a) ¶ 24.)

### 3. Administrative Exhaustion as to Plaintiff's Other Claims

When a prisoner brings multiple claims in a lawsuit under § 1983, he must "exhaust his administrative remedies *for each claim* he asserts in federal court." *Jones v. Johnson*, No. 3:15-CV-1135 (DJS), 2017 WL 1843692, at *3 (D. Conn. May 8, 2017) (citation omitted)

(emphasis added). Plaintiff failed to do that. He attempted to exhaust his administrative remedies for his due process claim, but he made no attempt to exhaust his administrative remedies for his retaliation claim. (*See* Defs.' 56(a) ¶ 23.) ("None of Plaintiff's grievances even mention . . . that anyone supposedly retaliated against him.") Thus, Plaintiff did not exhaust his administrative remedies for the retaliation claim.

When Plaintiff attempted to exhaust his administrative remedies for his due process claim, he filed an untimely Level 1 grievance, an untimely corrected Level 1 grievance, and an untimely Level 2 appeal. "If the deadline to file a grievance about an issue has passed, claims concerning that issue are unexhausted and barred from federal court." *Jones*, 2017 WL 1843692, at *3 (citing *Woodford*, 548 U.S. at 94–95). Thus, Plaintiff did not properly exhaust his due process claim because the grievances and appeal were not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). Thus, Defendants have established that Plaintiff failed to exhaust his administrative remedies.

### 4.     Unavailability of Administrative Exhaustion

Once Defendants establish that Plaintiff failed to exhaust his administrative remedies, Plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith*, 985 F. Supp. 2d at 284. Plaintiff has submitted no evidence showing that he exhausted his administrative remedies. Thus, Plaintiff must show that administrative remedies were unavailable to him under *Ross*. *See id.*

Plaintiff can show that administrative remedies were unavailable to him under *Ross* by demonstrating that the administrative procedure is "a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," that "an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use," or that "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

Exhaustion was not unavailable under *Ross*. Officers were not "unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* at 643. Plaintiff's Level 1 grievance was decided on the merits despite being untimely filed. (*See* ECF No. 27-7 at 9.) Plaintiff's Level 2 appeal was also decided despite being untimely filed. (*See id.* at 11.) Rendering decisions on untimely grievances shows that prison officials were willing to provide relief to Plaintiff despite the procedural shortcomings of his filings. *See, e.g., Jackson v. Whittington*, No. 22-CV-249 (MTT) (CHW), 2023 WL 5158950, at *3 (M.D. Ga. July 20, 2023), *report and recommendation adopted*, No. 22-CV-249 (MTT), 2023 WL 5153722 (M.D. Ga. Aug. 10, 2023) (concluding that because plaintiff's "grievances were processed . . . the grievance process still provided the possibility of relief and was not a dead end or futile").

Further, the administrative remedy scheme was not "so opaque that it [was], practically speaking, incapable of use." *See Ross*, 578 U.S. at 643. The Second Circuit has recognized that while A.D. 9.6 is "rigorous," it is "not so opaque as to be unavailable[.]" *See Riles,* 656 F. App'x at 581. Lastly, the Court can discern no evidence from the record that "prison administrators thwart[ed] inmates from taking advantage of a grievance process through

13

machination, misrepresentation, or intimidation." *See Ross*, 578 U.S. at 644; *see also Sanchez v. Bell*, No. 22-CV-1087 (SVN), 2024 WL 525594, at *9 (D. Conn. Feb. 9, 2024) (concluding that the third exception under *Ross* did not apply because "there [wa]s no evidence that prison officials tried to thwart Plaintiff's attempts to exhaust").

Because Plaintiff has failed to provide evidence that he exhausted his administrative remedies or show that administrative remedies were unavailable to him, summary judgment must be granted. *See Riles*, 656 F. App'x at 579 (affirming district court's dismissal based on inmate's failure to exhaust, under Administrative Directive 9.6, his excessive force claim against correctional staff). The Court therefore need not reach the merits of Plaintiff's claims or consider whether Defendants are entitled to qualified immunity. *See, e.g., Feaster v. U.S. Bureau of Prisons*, 37 F. App'x 15, 17 (2d Cir. 2002) (declining to reach question of qualified immunity on unexhausted claim); *Taylor v. Halladay*, No. 09-CV-0385 (DEP), 2010 WL 3120036, at *9 (N.D.N.Y. July 1, 2010) (declining to reach qualified immunity defense on unexhausted claim), *report and recommendation adopted*, No. 09-CV-0385 (FJS), 2010 WL 3155730 (N.D.N.Y. Aug. 9, 2010); *Scott v. Uhler*, 16-CV-403 (CFH), 2019 WL 5197139, at *6 n.10 (N.D.N.Y. July 31, 2019) (declining to address merits of plaintiff's Fourteenth Amendment claim after concluding that he failed to exhaust his administrative remedies), *report and recommendation adopted*, No. 16-CV-403 (TJM), 2019 WL 4667495 (N.D.N.Y Sept. 25, 2019); *Oliver v. Outhouse*, No. 9:06-CV-1412 (LEK/RFT), 2008 WL 508909, at *5 (N.D.N.Y. Feb. 21, 2008) (declining to address merits of plaintiff's Eighth Amendment claim after concluding that he failed to exhaust his administrative remedies).

## IV. CONCLUSION

Because there is no genuine issue of material fact regarding Plaintiff's failure to exhaust his administrative remedies, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 27) and **DISMISSES** the complaint with prejudice. The Clerk is directed to enter judgment accordingly and close the case.

**SO ORDERED.**

Hartford, Connecticut
September 10, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge